# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

July 20, 2018
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**ASPLUNDH TREE EXPERT COMPANY,**
**Employer Below, Petitioner**

**vs.)    No. 18-0347** (BOR Appeal No. 2052314)
(Claim No. 2016020928)

**MATTHEW BROWN,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Asplundh Tree Expert Company, by Melissa M. Strickler, its attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Matthew Brown, by Stephen P. New and Stacey L. Fragile, his attorneys, filed a timely response.

The issue on appeal is compensability of the claim. On February 16, 2016, the claims administrator rejected Mr. Brown's application for benefits. The Workers' Compensation Office of Judges reversed the claims administrator's decision and found the claim compensable for right shoulder dislocation on November 3, 2017. The Office of Judges also granted temporary total disability benefits as substantiated by the record. This appeal arises from the Board of Review's Order dated April 2, 2018, in which the Board affirmed and modified the decision of the Office of Judges. The Order was modified to reflect that the claim is compensable for a one-time dislocation of the right shoulder. The Board of Review found that treatment for the right shoulder dislocation should be covered from December 16, 2015, through June 16, 2016. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Brown, a tree trimmer, sustained a workplace injury on December 16, 2015. He was transported to the emergency room of Raleigh General Hospital by foreman Jeremy Ennis with

1

complaints of right shoulder pain. Mr. Brown was examined by Jose Romero, M.D., and underwent x-rays of the right shoulder, which revealed anterior glenohumeral dislocation and reduced right shoulder dislocation. He was discharged with instructions to follow up with his physician, to take pain medication as needed, to wear an arm sling for several days, and to perform range of motion exercises.

On December 20, 2015, Mr. Brown completed an Employee's Report of Occupational Injury form. The physician's section of the form was completed by Dr. Romero. The claims administrator rejected Mr. Brown's application for benefits in an Order issued on February 16, 2016. The claims administrator rejected the claim due to Mr. Brown's medical history of prior shoulder dislocations. The medical record indicated that Mr. Brown had dislocated his shoulder multiple times prior to the alleged incident on December 16, 2015. The claims administrator concluded that the shoulder dislocation was not a result of Mr. Brown's employment. It was the claims administrator's belief that the dislocation of Mr. Brown's shoulder could have happened at any time regardless of whether he was working or not. Mr. Brown filed a timely protest to the claims administrator's decision.

On January 13, 2016, Mr. Brown presented to James DeHaven, M.D. and Michael Taylor, M.D., of Summersville Orthopedics with complaints of right shoulder pain. Mr. Brown reported that he had experience 7-8 prior dislocations, with the last occurrence in 2012. Dr. DeHaven placed Mr. Brown on light duty restrictions at work, and he was ordered to not climb trees. An MRI of the right shoulder was ordered, and Dr. DeHaven expressed the need for possible shoulder stability surgery.

In treatment records dated May 23, 2016, Dr. DeHaven noted that, "[t]his dislocation was just one in a series of several; therefore, not work related." Dr. DeHaven noted that Mr. Brown advised him that he had a history of past dislocations. On June 16, 2016, Mr. Brown presented to Dr. DeHaven for a follow-up and to obtain the results of his MRI. The notes revealed, "the MRI was pretty much normal as far as the glenoid. He has a little mild uptake in the lateral aspect of the humeral head itself, which is just a residual from his injury from dislocation." Dr. DeHaven was of the opinion that Mr. Brown would have to have surgery to stabilize his shoulder.

On August 8, 2016, Mr. Brown presented to Dr. DeHaven and Dr. Taylor for follow-up and to obtain results from his EMG and NCV studies. Treatment notes revealed, "the EMG and NCV studies revealed mild carpal tunnel syndrome, but this is not carpal tunnel syndrome, and then some other sort of polyradiculopathy of his cervical spine. He wants to go ahead and have his shoulder fixed. He will be put on the schedule for an arthroscopic-assisted Bankart repair or capsular shift type operation if his labrum is okay."

Mr. Brown underwent arthroscopic surgery at Summersville Regional Medical Center on October 7, 2016. Dr. DeHaven performed an arthropscopic open Bankart repair of Mr. Brown's right shoulder. Mr. Brown tolerated the surgery well and his right arm was placed in a sling. He underwent post-operative treatment consisting of exercise, manual therapy, ultrasound, e-stim therapy, and cold therapy.

On October 25, 2016, Mr. Brown gave his sworn testimony in support of his claim. He testified about his employment with the Asplundh Tree Expert Company and how he was injured on December 16, 2015. Mr. Brown testified that he has had prior dislocations between 2006 through 2011. Mr. Brown testified that on December 16, 2015, he was "hunching" and moving up the tree while using ropes with friction knots. As he was pushing up with his right hand, he heard and felt a loud pop in his shoulder. He immediately experienced an excruciating amount of pain. Although he had suffered several dislocations in the past, Mr. Brown testified that it did not feel like the occasions when he injured himself by falling or after an ATV accident. He explained that a co-worker, Daniel Shrewsbury, helped him remove his gear, and the general foreman was called. He was transported to Raleigh General Hospital, where he was diagnosed with right shoulder dislocation. He testified that he has had no dislocations since December 16, 2015.

Mr. Brown submitted the sworn testimony of Daniel Shrewsbury, a line clearance employee of the employer, who was deposed on October 25, 2016. Mr. Shrewsbury testified that he was working with Mr. Brown on December 16, 2015, and was present when he dislocated his shoulder. He testified that as Mr. Brown was moving up the tree and slid his knot up, he heard a noise that caused him to ask Mr. Brown if he was okay. When Mr. Brown returned to the ground, he told Mr. Shrewsbury that he had dislocated his shoulder. Mr. Shrewsbury testified that the job involves pulling your body weight. Mr. Shrewsbury was Mr. Brown's direct supervisor. He testified that he and several other of his co-workers drafted incident notes about the injury.

Following the service of a Subpoena/Subpoena Duce Tecum, Dr. Romero was deposed on January 10, 2017. Dr. Romero testified as to his credentials, past medical experience, and his medical treatment of Mr. Brown. Dr. Romero was the physician who treated Mr. Brown on December 16, 2015, for the right shoulder dislocation injury. Dr. Romero ordered x-rays of the shoulder and made a diagnosis of anterior glenohumeral dislocation. He testified that determination of causation of Mr. Brown's dislocation is beyond him and should be issued by an orthopedic specialist. Dr. Romero stated that statistics support the opinion that someone who has sustained one prior dislocation is more susceptible to further dislocations of the shoulder. Dr. Romero signed the Report of Injury form and testified that the information submitted on the form was accurate based upon the treatment given to Mr. Brown on December 16, 2015.

Jeremy Ennis, general foreperson for the employer, was deposed on March 4, 2017. Mr. Ennis testified that he was working about a mile away from Mr. Brown on December 16, 2015, when he received a call about Mr. Brown's injury. Mr. Ennis testified that Mr. Brown had worked with him for about a fourteen month span of time. During that span of fourteen months, Mr. Ennis was not aware of Mr. Brown suffering any incidents involving his shoulder. Mr. Ennis transported Mr. Brown to Raleigh General Hospital for treatment. Mr. Ennis testified that he completed section one of the Report of Occupational Injury for Mr. Brown.

On May 11, 2017, Dr. DeHaven testified in a deposition that he began treating Mr. Brown on January 13, 2016. Dr. DeHaven testified that Mr. Brown has a recurrent dislocation history, with the last being in 2012. Mr. Brown presented with complaints of numbness in his

upper extremity. On October 7, 2016, Dr. DeHaven performed a Bankair repair on Mr. Brown's shoulder. In a treatment note, Dr. DeHaven stated that the dislocation was just one in a series of several, which led Dr. DeHaven to conclude that the injury was not work-related. He testified with Mr. Brown's history of dislocation, he was simply a dislocation waiting to happen. Specifically, Dr. DeHaven stated, "[i]t doesn't make any difference who he's working for or where he's at, at that point, it's going to happen again, at least statistically." However, Dr. DeHaven further testified that spontaneous dislocation rarely ever occurs and that there is always some sort of activity that puts the shoulder in an unstable position which would lead to the dislocation.

By Final Order dated November 3, 2017, the Office of Judges reversed the claims administrator's decision and found that Mr. Brown had sustained a right shoulder dislocation in the course of and resulting from his employment. The Office of Judges concluded that Mr. Brown's testimony, as well as the testimony of his co-workers, establishes that an injury occurred in the course of his employment on December 16, 2015. Mr. Brown testified that he heard his shoulder pop while he was moving up a tree while working. Mr. Shrewsbury's testimony corroborates the incident. The clinical findings, which were verified by x-ray evidence, are consistent with a diagnosis of dislocated right shoulder. Although Dr. DeHaven opined that the injury was not work-related, the Office of Judges found his opinion to be unreliable in light of the evidentiary record. Mr. Brown has a history of dislocation with his last one occurring in 2011-2012, approximately three to four years before the date of injury. His foreperson, Mr. Ennis, testified that Mr. Brown had been working for him for about fourteen months prior to the injury without a reported issue of dislocation. The Office of Judges reasoned that Mr. Brown suffered an isolated fortuitous injury that was unlike previous dislocations. The record indicates that the dislocation resulted in the shoulder ball-joint ending up against the chest muscle. The Office of Judges concluded that the evidence clearly shows that Mr. Brown's dislocation of the right shoulder resulted from performing his work duties during employment, and is therefore compensable. As a result of the compensability finding, the Office of Judges granted Mr. Brown temporary total disability benefits as substantiated by the evidence. The employer appealed the decision to the Board of Review.

On April 2, 2018, the Board of Review affirmed and modified the decision of the Office of Judges. The Board agreed with the conclusion that Mr. Brown sustained a right shoulder dislocation in the course of and resulting from his employment on December 16, 2015. However, the Board found that the claim should be limited to a one-time dislocation of the right shoulder. The Board noted Mr. Brown's multiple shoulder dislocations in the past in making its decision. The Board also determined that any treatment for Mr. Brown's right shoulder from December 16, 2015, through June 16, 2016, was medically necessary and reasonably required for the compensable injury.

After review, we agree with the reasoning and conclusions of the Board of Review. The evidence of record demonstrates that Mr. Brown suffered a compensable injury in the course of and as a result of his employment as a tree trimmer with the employer. It was proper for the Board of Review to deem any treatment for Mr. Brown's right shoulder injury from December 16, 2015, through June 16, 2016, as being medically necessary and reasonably required treatment

for the compensable injury. Given Mr. Brown's history of multiple dislocations, it was also proper for the Board of Review to limit the claim to a one-time dislocation of the right shoulder.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: July 20, 2018**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Loughry, Allen H., II suspended and therefore not participating